UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RYAN O'BOYLE,

        Plaintiff,

      v.                                                                           Case No. 16-cv-0959-bhl

GILBERT CARRASCO, et al.,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Ryan O'Boyle is representing himself in this 42 U.S.C. §1983 case. On March 12, 2019, the Court screened O'Boyle's amended complaint and allowed him to proceed on claims against six defendants in connection with his arrest and conviction for attempted second-degree intentional homicide with use of a dangerous weapon. Specifically, O'Boyle was allowed to proceed on: (1) unlawful arrest claims against Barbara O'Leary, Gilbert Carrasco, Kristopher Maduscha, and Michael Antoniak; (2) unlawful entry claims against Carrasco, Maduscha, and Antoniak; (3) unlawful detention claims against Carrasco and Mary Schmitz; and (4) self-incrimination and denial of counsel claims against Edwin Johnson. On April 19, 2021, at the Court's request, O'Leary, Carrasco, Maduscha, Antoniak, and Schmitz filed a motion for judgment on the pleadings asserting that O'Boyle's unlawful arrest and unlawful entry claims are procedurally barred. Dkt. No. 59. That motion is fully briefed and ready for the Court's decision.

## PRELIMINARY MATTERS

On July 20, 2016, O'Boyle filed a complaint under 42 U.S.C. §1983. The Court did not screen the complaint but instead, at O'Boyle's request, administratively closed the case pending

resolution of a postconviction motion O'Boyle had filed in state court. Dkt. No. 10 at 3. On September 20, 2018, O'Boyle filed a proposed amended complaint. Dkt. No. 15. The Court reopened the case on March 12, 2019 and screened the amended complaint. Dkt. No. 19. As noted, the Court allowed O'Boyle to proceed on claims against Edwin Johnson (among others) and ordered the U.S. Marshals Service to serve Johnson with the amended complaint. *Id.*

On April 23, 2020, the U.S. Marshals Service filed a "Process Receipt and Return" indicating that Johnson would not be returning or filing a waiver of service because he died on December 29, 2017. Dkt. No. 37. There is no indication that the marshals mailed the filing to O'Boyle. Nearly a year later, on April 19, 2021, O'Leary, Carrasco, Maduscha, Antoniak, and Schmitz confirmed in a footnote that Johnson died in 2017 and that the office for the Milwaukee City Attorney had not appeared on his behalf. Dkt. No. 60 at 1, n. 1.

Rule 25(a) of the Federal Rules of Civil Procedure sets forth a court's authority to order substitution if a party dies and a claim is not extinguished. "[W]hether a civil rights claim brought under §1983 survives a party's death is generally made in accordance with state law." *Rocco v. Bickel*, Case No. 12-cv-829, 2013 WL 4000886, at *2 (M.D. Penn. Aug. 5, 2013) (citing *Robertson v. Wegmann*, 436 U.S. 584, 588-89 (1978)). "[Section] 1983 claims are best characterized as personal injury actions." *Owens v. Okure*, 488 U.S. 235, 240 (1989) (citations omitted). And the Supreme Court of Wisconsin has affirmed that, under Wisconsin's survival statute, personal injury actions survive death. *Bartholomew v. Wisconsin Patients Compensation Fund and Compcare Health Services Ins. Corp.*, 293 Wis.2d 38, 61, n. 36 (2006) (citing Wis. Stat. §895.01)).

While O'Boyle's claims against Johnson appear to survive his death, substitution under Rule 25 does not appear to be available. The Seventh Circuit has not addressed this issue, but other courts have found that, "[a]s a general rule, the substitution of parties consistent with Rule

25(a)(1) cannot be ordered 'where the person for whom the substitution is sought died prior to being named a party.'" *Schlumpberger v. Osborne*, Case No. 16-cv-78, 2019 WL 927322, at *3 (D. Minn. Feb. 26, 2019) (quoting *Lacy v. Tyson*, Case No. 07-cv-381, 2012 WL 4343837, at *2 (E.D. Cal. Sept. 20, 2012), *adopting report and recommendation*, 2012 WL 5421230, at *1 (E.D. Cal. Nov. 5, 2012) (collecting cases)). O'Boyle did not file his proposed amended complaint and no efforts at service were made until *after* Johnson had already died. Accordingly, O'Boyle cannot substitute a party for Johnson because Johnson was never a party in the first place. *See Laney v. South Carolina Dept. of Corrections*, Case No. 11-cv-3487, 2012 WL 4069680 (D.S.C. May 8, 2012) ("Obviously, a deceased person cannot be served and respond to a lawsuit.").

Additionally, under Rule 25, a motion for substitution must be made within 90 days after service of a statement noting the death. "If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 15(a)(1). O'Boyle was served with a statement of Johnson's death on April 19, 2021. Dkt. No. 60 at 1, n. 1. Accordingly, the deadline to file a motion for substitution was July 19, 2021. No such motion was filed, so even under Rule 25, the Court must dismiss Johnson.

## BACKGROUND

The Court summarized the amended complaint's allegations in its screening order. Dkt. No. 19. For purposes of resolving Defendants' motion for judgment on the pleadings, the Court will restate the allegations relevant to O'Boyle's unlawful arrest and unlawful entry claims.

### 1. Allegations in the Amended Complaint

According to O'Boyle, on July 9, 2011, officers went to Froedtert Hospital to respond to a report of a stabbing. They allegedly interviewed Ricardo Moran, who told them that on July 8, 2011, he was stabbed three times (twice in the chest and once in the abdomen) while attending Summerfest with his wife. Moran allegedly identified O'Boyle "from photos" as the person who stabbed him. Dkt. No. 19 at 6 (citing Dkt. No. 15-3 at 1-2).

O'Boyle attached to his amended complaint "Form PC-24, Supplementary Report on Photo Array Identification Form," dated July 10, 2011—the day after officers allegedly visited Moran at the hospital. Dkt. No. 15-3 at 6. That form indicates that a photo array was shown to Moran at 10:55 p.m. at his home in Waukesha, Wisconsin. *Id*. Moran signed the form in two places, attesting that he had selected the person whose photo was in folder #3 as the person who committed the crime. *Id.* O'Leary signed the form as the reporting officer. *Id.*

O'Boyle alleges that on July 11, 2011, Carrasco, Maduscha, and Antoniak entered his home at night without a warrant, demanded to ask him questions "by threat of force," put him in handcuffs, and arrested him. Dkt. No. 15 at 2, 5. O'Boyle discusses in his amended complaint a "Probable Cause Statement and Judicial Determination, Form CR-215," dated July 11, 2011 and signed by "Det. Gilbert Carrasco." That document describes what happened at Summerfest on July 8, describes Moran's identification of O'Boyle from the photo array, and describes O'Boyle's arrest on July 11, 2011 at 1:30 a.m. *Id*. at 9.

O'Boyle also attached to his amended complaint a property control sheet, showing that on July 11, 2011—the day of his arrest—O'Leary checked into evidence a photo array supplemental report, a photo array and data sheet for file #15383, and booking photos for the array. Dkt. No. 15-3 at 3. He also attached a photo array to the amended complaint, which indicates that it was

prepared on October 10, 2011 at 8:36 p.m., with "saved file name 15383." Dkt. No. 15-3 at 4. Finally, O'Boyle attached a list of names and identifying information for six people (the same number of people shown in the October 10, 2011 photo array); O'Boyle's information appears in the fifth position on that sheet. *Id*. at 5. This sheet indicates that it was prepared on October 10, 2011 at 8:14 p.m. *Id*.

According to O'Boyle, the photo array used to determine probable cause was not included with "the Probable Cause Statement and Judicial Determination form CR-215." O'Boyle asserts that this means that the form was not "an objectively reasonable basis to determine probable cause." Dkt. No. 15 at 3. He also alleges that no judge or magistrate ever reviewed or signed the form, and that the form "was tampered with and/or modified." *Id*. Finally, O'Boyle asserts that the photo array used to establish probable cause did not exist at the time of his arrest. He alleges the State created it three months "post bind over" so it could claim it had probable cause to arrest him. *Id*. at 3, 4, 5.

**2. State Court Proceedings**

On April 16, 2012, in Milwaukee County Case Number 2011CF003261, *State of Wisconsin v. Ryan Paul O'Boyle*, O'Boyle filed a motion to suppress in which he argued that officers lacked probable cause to arrest him. A hearing on the motion was held before Milwaukee Circuit Court Judge Dennis R. Cimpl on May 29, 2012, the first day of trial. Defendants attached a transcript from the hearing to their motion. Dkt. No. 61-1.

Prior to addressing the merits of O'Boyle's motion, the prosecutor informed the circuit court that he had had discussions with O'Boyle's counsel and informed him that the mother of O'Boyle's girlfriend owned the house wherein O'Boyle was arrested and that she had given police permission to enter the house. Dkt. No. 61-1 at 4. The prosecutor notified the circuit court that,

based on the fact that she would testify that she had consented to the police entering her residence, the parties agreed that the propriety of the officers entering the home was no longer at issue. *Id.* O'Boyle's counsel confirmed that he was no longer "pursuing that line – of litigation." *Id.* at 5. When asked by the circuit court if he "agree[d] that the police had consent to enter the house," he stated, "Yes, Your Honor." *Id.*

With regard to the issue of probable cause for O'Boyle's arrest, O'Leary testified about statements O'Boyle's friend and girlfriend made about O'Boyle's actions at Summerfest, about O'Leary's efforts to put together a photo array, and the showing of the photo array to the stabbing victim. *Id.* at 9-11. O'Leary testified that the victim identified O'Boyle as the person who had stabbed him. *Id.* at 12. After O'Leary was cross-examined and counsel made their arguments, Judge Cimpl concluded there was probable cause to arrest O'Boyle. Judge Cimpl summarized his conclusion by stating, "There's certainly probable cause based upon everything that I've heard. The cops knew that there was a stabbing. They talked with people. People told them that this guy may have been involved in the stabbing. They take the six-pack. They show it to the victim. The victim says, That's the guy that stabbed me. They go out and arrest him. So the—There is probable cause to do that." *Id.* at 20-21.

After a jury found him guilty of attempted second-degree intentional homicide with the use of a dangerous weapon, O'Boyle filed a motion for postconviction relief on June 14, 2013. On October 8, 2013, Circuit Court Judge Glenn Yamahiro issued a decision and order partially denying the motion for postconviction relief and ordering an evidentiary hearing on O'Boyle's challenge to the photo array that formed the basis for probable cause for his arrest. *See* Dkt. No. 61-2. At the evidentiary hearing, Judge Yamahiro noted that "the narrow issue . . . is whether or not counsel's failure to renew his objection of personal jurisdiction was ineffective and whether or

not if the photo array was found to be so suggestive it could not form the basis of probable cause. *Id.* at 18-19. He further stated that a hearing was necessary to "resolve any issues here with regard to the practices used to secure the identification . . . ." *Id.* at 19. Moran and O'Leary testified. Moran explained that he identified O'Boyle as the man who stabbed him after reviewing the photos O'Leary showed him. O'Leary testified about how she prepared the photo array and the procedures she followed in presenting the photo array to Moran. *Id.* at 20-44.

On December 17, 2013, Judge Yamahiro orally ruled that he was "satisfied, after listening to the testimony regarding the manner in which the photo array was conducted, that there would have been no basis to suppress it . . . . [He found] that the procedures were complied with in this case; that there's nothing defective about the photo array in any way." Dkt. No. 61-3 at 4.

In his appeal to the Wisconsin Court of Appeals, O'Boyle challenged not only his judgment of conviction but also the denial of his motion for postconviction relief. *See* Dkt. No. 61-4. He again included the argument that "the police did not comply with proper photo array procedures when the victim identified O'Boyle as having stabbed him." *Id.* at 2. In affirming the judgment and decisions of the lower court, the Court of Appeals noted, "[a]s we have seen, however, O'Boyle lost on his pre-trial challenge to the photo array. . . . We have further seen that all of the problems O'Boyle raises with the photo array were explained away at the postconviction hearing. . . . Accordingly, this issue has no merit and we do not discuss it further." *Id*. at 18.

In October 2017, O'Boyle filed another motion for postconviction relief. *See* Dkt. No. 61-5. He again raised his arguments regarding the photo array and probable cause determination. *See id.* at 2. He also argued that the trial court "'ruled in error' with regard to his contention that police illegally entered the residence to arrest him . . . ." *Id.* In an October 31, 2017 decision denying the motion for postconviction relief, the court noted that O'Boyle's "assertion that the arrest was

conducted without a warrant and that police made a warrantless entry is rejected. As indicated previously, the owner of the residence gave police consent to enter. The arrest itself was based on a photo array found to be properly presented. [O'Boyle's] claims that trial counsel should have filed a motion to suppress evidence or a motion to dismiss based on an unconstitutional seizure are predicated on the same grounds—that an illegal entry and arrest were made, which issues have already been decided." *Id.* at 2-3.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to seek judgment on the pleadings after the pleadings have been closed. *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Courts apply the same standard in deciding a motion for judgment on the pleadings as they do in deciding a motion to dismiss. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). The facts are viewed in the light most favorable to the non-movant. *Id*. To survive a motion to dismiss or for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Generally, under Rule 12(d), when in support of a motion under Rule 12(c) a party presents matters outside the pleadings, the Court must treat the motion as one for summary judgment under Rule 56. However, the Court may take judicial notice of matters of public record, including public court documents not subject to reasonable dispute, without converting a Rule 12 motion to a motion for summary judgment. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

## ANALYSIS

Defendants assert that O'Boyle's claim of unlawful arrest against O'Leary, Carrasco, Maduscha, and Antoniak and his claim of unlawful entry against Carrasco, Maduscha, and Antoniak are procedurally barred and must be dismissed.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94-96 (1980) (citations omitted). Federal courts give preclusive effect not only to prior federal decisions but also to prior state decisions. *Id.* Thus, "collateral estoppel applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings." *Id.* at 102.

A federal court must give a state court decision the same preclusive effect that would be given in the state court if, under the law of the forum state the claim would be barred by res judicata or collateral estoppel, and the party against whom the earlier decision is asserted as a bar had a full and fair opportunity to litigate the claim or issue. *See Lolling v. Patterson*, 966 F.2d 230, 235 (7th Cir. 1992); *Crowall v. Heritage Mut. Ins. Co.*, 118 Wis.2d 120, 126 (1984). Under Wisconsin law, "[a]n issue is barred by collateral estoppel only if it was litigated, determined, and necessary to the decision in the prior proceeding." *Reckner v. Reckner*, 105 Wis.2d 425, 436 (1981).

The Court finds that collateral estoppel precludes O'Boyle from relitigating his claim that officers lacked probable cause to arrest him because of issues with the photo array. Review of the state court records reveal that O'Boyle litigated this issue in pre-trial and postconviction motions. O'Boyle, who was represented by counsel at the time, had a full and fair opportunity to be heard on the issue, including being allowed to call witnesses and make arguments in two different evidentiary hearings. In both hearings, the judges concluded that probable cause existed for

O'Boyle's arrest. On O'Boyle's postconviction motion, Judge Yamahiro decided "that the procedures were complied with in this case; that there's nothing defective about the photo array in any way." Dkt. No. 61-3 at 4. Finally, as Defendants highlight, the determination that probable cause existed (based on Moran identifying O'Boyle from the photo array) was "necessary to the state court's final judgment" because a finding that officers lacked probable cause to arrest O'Boyle could have resulted in dismissal of the criminal complaint. Because this claim was "litigated, determined, and necessary to the decision in the prior proceeding," O'Boyle is precluded from litigating that claim in this lawsuit, and that claim must be dismissed. *Reckner*, 105 Wis.2d 425, 436 (1981).

The Court reaches a different conclusion on O'Boyle's illegal entry claim. Defendants assert that the issue was litigated and determined in the state court. They highlight that O'Boyle's counsel, after learning how a witness would testify, conceded that officers had consent to enter the home where O'Boyle was arrested. Further, in rejecting O'Boyle's argument in his second motion for postconviction relief, the circuit court determined that "the owner of the residence gave police consent to enter." Dkt. No. 61-5 at 3. The circuit court further noted that because this issue (among others) had been previously litigated, O'Boyle could not relitigate them "no matter how artfully [he] may rephrase the issue." *Id.* at 2.

But Defendants make no argument to support a conclusion that the circuit court's determinations were necessary to the final judgment, *i.e.*, O'Boyle's conviction. *See* Dkt. No. 60 at 8. Their brief is silent on this point, presumably because even if the circuit court had determined that the officers violated the Fourth Amendment when they entered the home to arrest O'Boyle, such a determination would not have required the circuit court "to exclude all evidence or forgo prosecuting" O'Boyle. *State v. Felix*, 339 Wis.2d 670, 696 (2012). In other words, a decision on

this issue in O'Boyle's favor would not have resulted in a dismissal of the criminal complaint. Accordingly, because Defendants have not carried their burden of showing that the determination of this issue was necessary to the state court's final decision, collateral estoppel does *not* bar O'Boyle from relitigating that issue in this lawsuit.

For the foregoing reasons, the Court will dismiss Edwin Johnson (who is deceased) and O'Boyle's unlawful arrest claims against O'Leary, Carrasco, Maduscha, and Antoniak. Because the unlawful arrest claim was the only claim O'Boyle stated against O'Leary, she also will be dismissed. That leaves O'Boyle's unlawful entry claim against Carrasco, Maduscha, and Antoniak and his unlawful detention claim against Carrasco and Schmitz.

As to next steps, the Court notes that discovery closed on December 31, 2020. However, on February 26, 2021, in response to a show-cause order, O'Boyle informed the Court that he never received the Court's September 1, 2020 scheduling order and so did not know that discovery had been opened, let alone closed. Dkt. No. 51. According to O'Boyle, he was released from prison on June 9, 2020 and, prior to the Court's show-cause order, had not heard from the Court since December 2019. A review of the docket shows that the scheduling order was returned to the Court as undeliverable in early September 2020. Dkt. No. 41. O'Boyle provided the Court with updated contact information on November 12, 2020. Dkt. No. 44. It does not appear that the scheduling order was mailed to O'Boyle at his updated address. With this history in mind and in the interest of fairness and efficient resolution, the Court will set in a separate order new discovery and dispositive motion deadlines for the parties.

**IT IS THEREFORE ORDERED** that Edwin Johnson is **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 59) is **GRANTED in part**. O'Boyle's unlawful arrest claim and Barbara O'Leary are **DISMISSED**.

Dated at Milwaukee, Wisconsin this 30th day of July, 2021.

BY THE COURT:

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge