UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN P. O'BOYLE,

        Plaintiff,

        v.                                                        Case No. 16-cv-0959-bhl

GILBERT CARRASCO, et al.,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Plaintiff Ryan P. O'Boyle is representing himself in this 42 U.S.C. §1983 case. He is proceeding on Fourth Amendment claims arising from his July 20, 2016 arrest and initial detention. On December 30, 2021, Defendants Michael Antoniak, Gilbert Carrasco, Kristopher Maduscha, and Mary Schmitz filed a motion for summary judgment, which is fully briefed and ready for the Court's decision. For the reasons explained below, the Court will grant Defendants' motion and dismiss this case.

### BACKGROUND

      On July 8, 2011, Ricardo Moran was stabbed twice while attending a concert at Milwaukee's Summerfest Festival. The City of Milwaukee Police Department investigated the stabbing, which led to the identification of O'Boyle as the main suspect. On July 10, 2011, shortly after O'Boyle's last known address was identified, a Temporary Felony Want (TFW) was issued for O'Boyle. A TFW is an interdepartmental memo stating that law enforcement has determined there is probable cause to arrest a felony suspect for a temporary period of time. Dkt. Nos. 94, 99 at ¶¶16-20.

Defendant Detective Carrasco, who was on duty when the TFW was issued, decided to follow up and called for backup to assist him in going to O'Boyle's last known address. Defendant Police Officers Antoniak and Maduscha responded to Carrasco's call. At about 1:10 a.m. on July 11, 2011, Carrasco, Antoniak, Maduscha, and other officers who are not named in this action, approached O'Boyle's residence. Noreen Esselman answered the door. At the time, O'Boyle was in his bedroom upstairs. According to Defendants, Esselman identified herself as the homeowner and confirmed that her daughter was O'Boyle's girlfriend and that O'Boyle was there. Defendants assert that Esselman consented to the officers entering her home for the purpose of arresting O'Boyle. Dkt. Nos. 94, 99 at ¶¶21-26; Dkt. No. 90 at ¶6; Dkt. No. 91 at ¶11; Dkt. No. 92 at ¶11.

O'Boyle asserts that he heard a knock at the door of the living room entrance to the stairs leading to his bedroom. He states that Esselman was standing at the bottom of the stairs with Maduscha. Maduscha stated, "Are you Ryan O'Boyle?" After O'Boyle responded in the affirmative, Maduscha stated that they wanted to ask him some questions. O'Boyle stated, "Well, I can't really answer any questions without my attorney present, so if you'd leave a card, I'll come down to the station. . . ." After Maduscha ordered O'Boyle to come downstairs, O'Boyle went to his room to put pants on and then went downstairs where officers arrested him. Dkt. No. 100 at ¶¶7-19.

Following O'Boyle's arrest, at about 1:50 a.m., Antoniak and Maduscha transported O'Boyle to the Milwaukee Police Administration Building Central Booking Department. A couple of hours later, Carrasco completed two forms: Form PA-45, entitled "Milwaukee Police Department Arrest-Detention Report," and Form CR-215, entitled "Probable Cause Statement and Judicial Determination," which was required because O'Boyle had been arrested without a warrant. The next afternoon, about thirty-eight hours after O'Boyle was arrested, Milwaukee

2

Circuit Judge Barry Phillips signed the CR-215 form, concluding that there was probable cause to believe that O'Boyle had committed the felony charge for which he had been arrested. Dkt. Nos. 94, 99 at ¶¶30-32; Dkt. No. 88-4.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

O'Boyle asserts that Antoniak, Carrasco, and Maduscha violated his Fourth Amendment rights when they entered his residence to arrest him without a search warrant and without exigent circumstances.[1] He also asserts that Carrasco and Schmitz violated his Fourth Amendment rights

---

[1] O'Boyle was initially allowed to proceed on additional claims, *see* Dkt. No. 19, but those claims were dismissed on July 30, 2021, *see* Dkt. No. 74.

when they detained him for more than forty-eight hours without a judicial determination that there was probable cause for his arrest. Defendants dispute O'Boyle's claims.[2] The Court will address each claim in turn.

I.  **Antoniak, Carrasco, and Maduscha Are Entitled to Summary Judgment on O'Boyle's Claim that They Entered His Residence in Violation of the Fourth Amendment.**

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriquez*, 497 U.S. 177, 181 (1990). However, a well-established exception to that general prohibition allows officers to enter a home if they first obtain the voluntary consent of any person possessing authority. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (citations omitted). A person with authority may include the owner of the property or a fellow occupant who shares common authority over the property. *Id.* (citations omitted). Officers may not rely on the consent of a co-occupant if a second occupant is physically present and objects. *Id.* at 122-23. Importantly, officers are under no obligation to "take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received." *Id.* at 122. Thus, if a person "with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.* at 121.

Defendants assert that Esselman confirmed that she was the owner of the home and that O'Boyle was present. They also assert that, based on her responses to their questions, they believed they had her consent to enter the home to arrest O'Boyle. O'Boyle insists that Esselman

---

[2] Defendants also assert that O'Boyle's claims are time-barred by Wisconsin's three-year statute of limitations, but, as O'Boyle points out, at the time of the alleged violations, the statute of limitations was six years, not three years. *See D'Acquisto v. Love,* No. 20-C-1034, 2020 WL 5982895, at *1 (E.D. Wis. Oct. 8, 2020) (explaining that in 2018 the Wisconsin legislature changed the statute of limitations under Wis. Stat. §893.53 from six years to three years).

4

did *not* consent and that officers entered the home with a show of force, but he offers no evidence to support his assertions or to call into question the reasonableness of Defendants' belief that Esselman had consented to them entering. O'Boyle concedes that he was not present when officers first interacted with Esselman or when they entered the home; his first interaction with Defendants was after they had already entered. Accordingly, he has no personal knowledge about what happened when the officers entered, and his speculation about Defendants' interactions with Esselman is insufficient to create a triable issue. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008) ("inferences supported only by speculation or conjecture do not suffice to create a triable issue").

Consistent with the Supreme Court's holding in *Randolph*, once the officers secured the consent of Esselman, they were under no obligation to take steps to find potential objectors in the residence before acting on her consent. Accordingly, Antoniak, Carrasco, and Maduscha are entitled to summary judgment on O'Boyle's claim that they entered his home in violation of the Fourth Amendment.

**II.  Carrasco and Schmitz Are Entitled to Summary Judgment on O'Boyle's Claim that They Detained Him in Violation of the Fourth Amendment.**

The Supreme Court has explained that, under the Fourth Amendment, a "State has no legitimate interest in detaining for extended periods individuals who have been arrested without probable cause." *County of Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991). However, with that in mind, "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement . . . ." *Id.*

Carrasco explains that after O'Boyle's arrest he completed the CR-215 Form entitled "Probable Cause Statement and Judicial Determination," which contained his summary of official reports, victim statements, and officers' findings. Dkt. No. 90 at ¶10. Carrasco submitted the form

for a judicial determination at 3:42 a.m. on July 11, 2011, within a few hours of O'Boyle's arrest. *Id*. Milwaukee County Circuit Judge Barry Phillips determined there was probable cause to arrest and detain O'Boyle at 3:40 p.m. on July 12, 2011, just more than thirty-eight hours after O'Boyle's arrest. *Id.* at ¶12; Dkt. No. 88-4.

O'Boyle disputes the validity of the executed form. He explains that he has repeatedly sought production of this document for eleven years, first in his criminal proceedings and then in this case. He states that Defendants have only ever produced the first page of this document signed by Carrasco. According to O'Boyle, Defendants provided the second page with Judge Phillips' determination for the first time in support of their summary judgment motion. He states that "[i]t seems very convenient that this document just 'miracled' into existence now . . . ." Dkt. No. 98 at 27. Defendants did not respond to O'Boyle's assertions regarding their failure to produce this document in discovery.

If O'Boyle's assertions are true, the Court shares his frustration with Defendants' failure to timely produce this document. Had they done so, it is possible that the time and resources spent by the Court and the parties could have been preserved. However, the mere fact that Defendants failed to timely produce the document does not call into question its genuineness. Defendants' counsel declared under penalty of perjury that the document was a "true and accurate copy." Dkt. No. 89 at ¶6. And, under Fed. R. Evid. 902, the document is self-authenticating because Judge Phillips signed it under seal. O'Boyle provides no evidence that the document was forged or otherwise fabricated, and his unsupported suspicions are insufficient to create a triable issue regarding the document's authenticity. *See Bodor v. Town of Lowell*, 248 F. App'x 752, 753-54 (7th Cir. 2007). Accordingly, because O'Boyle fails to rebut Defendants' evidence that a judicial

6

determination of probable cause was made within forty-eight hours of his arrest, Carrasco and Schmitz are entitled to summary judgment on this claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 87) is **GRANTED** and this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on April 22, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.